**BATTLES v. WELLAN.**

No. 5984.

Court of Appeal of Louisiana. Second Circuit.

Jan. 5, 1940.

Rehearing Denied Feb. 7, 1940.

Writ of Certiorari and Review Denied April 29, 1940.

Vincent Hazleton and Leo Gold, both of Alexandria, for appellant.

Gist & Thornton, of Alexandria, for appellee.

DREW, Judge.

The lower court has correctly set out the pleadings and issues in this case in the following opinion:

"This is a suit for recovery of alleged damages in the sum of $1,575.00, composed of $1,000.00, for pain and suffering physically; $500.00 for mental pain and anguish; $50.00 for loss of employment and $25.00 for medical treatment, sustained by plaintiff as the result of slipping up and falling upon the tile flooring on the foyer or arcade at the entrance of defendant's department store located at the corner of Third and Washington streets in the City of Alexandria, Parish of Rapides, Louisiana, while walking over said flooring, at about 5:30 P. M., June 22, 1938, for the purpose of inspecting the goods, wares and merchandise of defendant which were on display in the show windows in said arcade.

"It is alleged that rain had been falling on the afternoon of the day of the accident and water had been allowed to accumulate and remain on said tile flooring, producing a slippery condition and which caused plaintiff to slip and fall in walking over same; that it was gross negligence and carelessness on the part of the defendant, his agents and employees in permitting the water to remain on the flooring. It is alleged that the said flooring is composed of hard, octagonal shaped, ceramic tile, which presents a smooth, slippery surface, especially when damp or wet.

"Petitioner alleges that she had only proceeded a step or two inside said foyer when she reached a spot on the tile flooring on which water had been allowed to collect and remain, and that there she slipped, lost her balance and fell forward heavily; that as a result of the fall she injured her nerves, tissues, ligaments, muscles and bones in and about her right arm, wrist and hand, and that she sustained a severe fracture of the distal end of the radius bone in her right arm, wrist and hand.

"Plaintiff alleges that she was lawfully on the defendant's premises at his implied invitation to come and inspect his wares and merchandise; that she rightfully assumed that the entrance to the building and its floor were safe for use on her part, and that she was totally ignorant of the dangerous condition of the floor.

"In answering plaintiff's petition, defendant denies any negligence on his part; denies that any dangerous condition existed in or about his store on the date alleged or at any other time; avers that the style and composition of the floor in the arcade and entrance to his store is similar to that found in most all department stores in cities in Louisiana, and elsewhere, and presents the same surface and characteristics with reference to smoothness as other similar tiles in other stores; avers that if any water had accumulated and remained there on the evening alleged, he had no knowledge of any such condition; that said passageway or foyer was covered over and that it was impossible for any water to accumulate thereon from falling rain unless the rain was accompanied by excessive winds, 'which was not the condition on the afternoon of June 22, 1938.'

"Further answering, defendant pleads, in the alternative, negligence on the part of plaintiff barring recovery.

"There is not much variance between the allegations of fact on the part of both plaintiff and defendant and the facts testified to by the witnesses. Plaintiff testified that she had entered the arcade from the street for the purpose of looking at some dresses in the middle show window inside the arcade or passageway in front of the entrance into the store proper; that she was not looking at the floor particularly, but was looking forward toward the dresses in the glass show window, and suddenly slipped in a little pool of water, or a wet, slippery place on the floor caused by the collection of water from the rain which had fallen a few hours previously. The testimony showed that it had rained. There-

was certain testimony to the effect that there were slight depressions in places on the flooring, caused possibly by a slight sinking of the floor foundations during the rather long period of years since the building had been constructed. On the other hand, two architects, Mr. Harris who testified for plaintiff and Mr. Roberts who testified for defendant, both stated that the tiling found in this floor is the same type which was universally used in buildings at the time this was constructed, some 20 odd years ago, and not much different from the kind used now in similar types of buildings. It appears to have been the standard type, both as to material and construction. Also, it appears that there is nothing peculiar about the construction of the arcade itself that would distinguish it from those of other store buildings in this and other cities.

"Just the day before this case was tried, there was a rather severe rain storm, accompanied by high wind, and certain witnesses testified to having observed the tile floor in question after the rain, stating that they saw some small pools of water in slight depressions at or near the point where plaintiff slipped and fell. However, Mr. Wellan, the defendant, testified that he had never observed any such condition at any time nor had his attention ever been called to such a condition. There was testimony to the effect that the occupants of the building prior to defendant's occupancy, had been putting sawdust on the floor at times when the floor was wet, as a precaution against people slipping and falling, but defendant and some of his employees testified that defendant had used sawdust also, not on account of rain but that it was used in cleaning the floors.

"Plaintiff's counsel in brief filed have cited decisions of the courts on the question of actionable negligence of storekeepers in keeping their stores and entrances thereto free from dangerous conditions such as to endanger the lives of persons entering and leaving such places for the purpose of trading and buying merchandise. The rule appears to be that the storekeepers must exercise ordinary care and prudence to keep the aisles, passageways, floors and walks in a reasonably safe condition for his customers. Grigsby v. Morgan & Lindsey, La.App., 148 So. 506. In the cited case, there was a hole in the floor of the interior of the store along a passageway down between two counters. The plaintiff got her shoe heel hung in the hole as she walked along the passageway and she was awarded damages for injuries sustained by falling to the floor.

"In the case of Ransom v. Kreeger Store, La.App., 158 So. 600, cited by counsel, plaintiff slipped and fell while walking along an aisle between counters inside the store, due to water which had been left on the floor by a scrub-woman in cleaning the floor. Damages were awarded in that case for injuries sustained.

"In the case also cited, Cavicchi v. Gaiety Amusement Company, Inc., La.App., 173 So. 458, damages were awarded for injuries sustained by a four-year-old boy who slipped in a dark passageway leading from the picture theatre he was attending to an outhouse in an open yard from the rear of the building, the passageway being wet from rain through a door which had been left open on a rainy night.

"Another case cited is where a storekeeper kept a floor used by his customers greasy and oily, making an unsafe place on which to walk, in which damages were allowed to a customer who slipped and fell. Aden v. Scott-Burr Stores Corporation, La. App., 176 So. 131.

"Several other cases were cited and relied upon by plaintiff of a similar nature as those above referred to. In all of them, with the exception of the little boy falling on the wet passageway from the theatre to the toilet, are presented instances where some condition existed by reason of something which the storekeeper had done, producing some dangerous place, and not where he had omitted to keep rain water from collecting at some place on or at the exterior of the store building. We hardly think the present case can be likened to that of the small boy or that that case should serve as a guide for the present one wherein a grown middle-aged woman deliberately walked from a wet sidewalk onto the floor of the arcade of defendant's store, had walked over that same flooring many times before, knew its construction, especially its smoothness of surface, could easily have observed whether there was water accumulated on any portion of it or whether it was wet and slippery. Had she been inside the store and while walking down an aisle encountered a wet and slippery floor, we do not think it should be presumed that she should have thought it necessary to pay any attention to the floor. But on the outside of the store proper

which by its very nature might become wet from rain, especially if accompanied by much wind from the side next to Washington street, where she entered, together with the further fact that the flooring of the arcade being of smoother surface than the ordinary concrete sidewalk—she knowing this from experience, mature judgment and observation of such places—we think that unless she paid some attention to where she was walking, she would be negligent herself such as to bar recovery. And she testified that she was not looking at the floor, but had her eyes focussed upon a dress or some dresses in a show-window just ahead of her. This would indicate that she was giving no thought or care as to the naturally, unusually smooth tile flooring over which she was walking at the time. This fact, coupled with the fact that, as testified to by several witnesses, both for the plaintiff and defendant, the particular flooring used at the place designated was of the standard type and quality in use throughout the country, approved by both architects and builders, must operate to defeat recovery in this case.

"We do not think defendant guilty of actionable negligence. We believe that the testimony as a whole shows that he had exercised the ordinary care and prudence in the keeping of the premises in question which the law requires in such cases. (See Bartell v. Serio, La.App., 180 So. 460, cited by defendant's counsel in brief filed; also other cases therein cited.)

"For these reasons, there will be judgment rejecting plaintiff's demands.
                    "R. C. Culpepper, Judge."

Both plaintiff and defendant admit that the facts found by the lower court are the true ones in the case; however, plaintiff seriously questions the conclusions reached by the lower court and for that reason is prosecuting this appeal. It is her contention here that the proper application of the law and jurisprudence of this state to the facts found by the lower court warrants the rendering of judgment for her as prayed for.

In Bartell v. Serio, La.App., 180 So. 460, 462, the court said: "Assuming that the relationship between the parties was that of storekeeper and customer—and that seems to us, from the point of view of plaintiff, to be the most favorable legal status in which we can place her, there is no liability to her. Even a storekeeper is not the insurer of the safety of his customers. He need not keep his floors and passageways in perfect condition, but must exercise only 'ordinary care and prudence to keep' (them) 'in a reasonably safe condition for his customers.' Farrow v. John R. Thompson Company, 18 La.App. 404, 135 So. 80, 137 So. 604, 605. See, also, Thompson Grocery Company v. Phillips, 22 Colo.App. 428, 125 P. 563; Bloomer v. Snellenburg, 221 Pa. 25, 69 A. 1124, 21 L.R.A.,N.S., 464; Langley v. Woolworth Company, 47 R.I. 165, 131 A. 194; Lawson v. Shreveport Waterworks Company, 111 La. 73, 35 So. 390; and Bell v. Feibleman & Company, Inc., La.App., 164 So. 273."

In Farrow v. Thompson Company, 18 La.App. 404, 135 So. 80, 137 So. 604, 605, the court said:

"We have been referred to numerous citations of authority bearing upon the question of the responsibility of a storekeeper, or a restaurant proprietor, for injuries due to unusual or defective conditions in the floor of the storehouse or restaurant, and we have no difficulty in finding the law to be that the owner or proprietor of such place must exercise ordinary care and prudence to keep the aisles, passageways, floors, and walks in a reasonably safe condition for his customers who are on the premises by his implied invitation. Thompson Grocery Company v. Phillips, 22 Colo.App. 428, 125 P. 563; Bloomer v. Snellenburg, 221 Pa. 25, 69 A. 1124, 21 L.R.A.,N.S., 464; Langley v. Woolworth Company, 47 R.I. 165, 131 A. 194; Lawson v. Shreveport Waterworks Company, 111 La. 73, 35 So. 390.

"However, as we said in Hendricks v. Maison Blanche Company, 5 La.App. 410, in order 'to maintain an action by a customer against the owner of a store for apparent defects in the building two elements must concur, viz., fault on the part of the master, and ignorance of danger on the part of the customer.'"

In Bell v. Feibleman & Company, Inc., La.App., 164 So. 273, the rule laid down in the above quotation was again set out. When this doctrine is applied to the facts found by the lower court, it is clear to our minds that the defendant was not guilty of any negligence.

We find no error in the judgment of the lower court and it is affirmed, with costs.