288 So.2d 380 (1974)
Wilda J. PEAR, wife of/and Thomas J. Pear
v.
LABICHE'S INC. and the Travelers Ins. Company.
No. 5978.
Court of Appeal of Louisiana, Fourth Circuit.
January 8, 1974.
Rehearing Denied February 6, 1974.
Writ Granted March 15, 1974.
*381 Badeaux, Discon & Cumberland, Carl J. Barbier, New Orleans, for plaintiffs-appellants.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Herschel L. Abbott, Jr., New Orleans, for defendants-appellees.
Before SAMUEL and GULOTTA, JJ., and MARCEL, J. Pro Tem.
GULOTTA, Judge.
This is an appeal from a dismissal of plaintiffs' suit for damages resulting from injuries received from the collapse of a metal folding chair furnished by LaBiche's on which plaintiff was sitting in defendant's store.
The facts are that plaintiff, Mrs. Wilda Pear, accompanied by adult relatives and two minor children, went to LaBiche's for the purpose of purchasing a stove. Financial arrangements were being made for the purchase with the salesman, Gaston Bernard Borne. At one point in the conversation, the salesman provided plaintiff with a chair. While seated and after Mrs. Pear had apparently written a check and completed filling out credit application forms, the chair collapsed causing her to fall.
The trial judge, in denying plaintiffs' suit, in his reasons for judgment stated:
"* * * This Court finds as a fact that the defective portion of the chair was not readily discernible prior to the collapse of the chair. This Court believes that a reasonably prudent proprietor would not have discovered the defect prior to the date of the collapse of said chair.
"The Courts of this State have repeatedly held that although the law imposes a duty of reasonably care to the invitee, it does not make the storekeeper the absolute insurer of the safety of persons properly on the premises and his liability does not arise unless and until it is established that the injury or loss was caused by his negligence. * * *"
In seeking reversal, plaintiffs claim the trial judge erred in holding that the defect in the chair was not readily discernible and *382 that a reasonably prudent proprietor would not have discovered the defect. It is plaintiff's position that an inference of negligence is created by the collapse of the chair, and that the burden is then placed on the defendant to exculpate himself from negligence by either showing that a reasonable inspection was, in fact, made; or though no inspection was made, if a reasonable one had been made, the defect would not have been discovered. They rely, among others, on the case of Nettles v. Forbes Motel, Inc., 182 So.2d 572 (La. App. 1st Cir. 1966), where a motel guest was injured when a stool on which plaintiff was standing collapsed. The court in the Nettles case, in finding the motel owner liable, concluded the stool must have been obviously "loose to one making an inspection of it, since it collapsed under a minimal strain." The court went on to say that the defect should have been discovered in the exercise of reasonable care.
Plaintiffs further rely on Williams v. Candlelight Inn, 224 So.2d 548 (La.App. 3rd Cir. 1966) which follows the same reasoning used in the Nettles case. In Williams, a wooden chair collapsed when screws pulled loose. Plaintiffs cite further Prescott v. Central Contracting Co., 162 La. 885, 111 So. 269, in support of their argument that an inference of negligence is created in the instant case and that the doctrine of res ipsa loquitur is applicable.
Finally, plaintiffs interestingly suggested that this case is the proper one for the application of a strict liability concept. They cite the language of Justices Barham and Tate in a concurrence in a denial of an application for writs in Theriot v. Transit Casualty Company, 265 So.2d 845 (La.App. 3rd Cir. 1972), Writ Refused, 263 La. 106, 267 So.2d 211 (1972), and the recent case of Simon v. Ford Motor Company, La., 282 So.2d 126 (1973).
Defendants, on the other hand, in seeking affirmation of the judgment, in brief, call to our attention the line of jurisprudence which requires the owner of the premises to exercise reasonable and ordinary care to provide a safe place to invitees of the premises and which postulates that the proprietor is not the insurer of the safety of his customers.[1]
Defendants further insist that the doctrine of res ipsa loquitur is not applicable to the instant case. They theorize that this doctrine does not apply to storekeepers who do not have the exclusive care, custody and control of the instrumentality which caused the damage. According to defendants, the chair was, from time to time, in the control and custody of the customers of defendant, LaBiche's; and under those circumstances, plaintiffs cannot avail themselves of the favored concept of res ipsa.
Defendants finally argue that our courts have exhibited a greater willingness to apply this doctrine in cases involving dangerous instrumentalities.
At the outset, we reject defendants' argument that the doctrine of res ipsa loquitur is not applicable to the instant case. While the doctrine might be more readily applied to dangerous instrumentality cases (such as automobiles or machinery), nevertheless, this does not preclude its application in cases where injury results from a defect in any instrumentality in the custody of the defendant. Any instrument (such as a chair) becomes a dangerous one when injury results. We find no merit to this argument. Nor do we find merit in defendants' suggestion that the chair was not in the exclusive custody and control of LaBiche's. Suffice it to say that a chair on a storekeeper's premises supplied by him for use of his customers is clearly *383 within the custody and control of the proprietor.
Although we conclude plaintiffs are favored with the inference of negligence against the defendants resulting from the fall caused by a defect in the chair, nevertheless, we affirm the decision of the trial court dismissing plaintiffs' suit. Our analysis of the facts in the instant matter will not allow recovery to plaintiffs without the application of a strict liability concept on storekeepers. The basis of this concept is found under LSA-C.C. art. 2317 which reads as follows:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications." (emphasis ours)
However, it appears the majority of the Louisiana Supreme Court in the recent Theriot and Simon cases, supra, are not willing to adopt the view that this article places a strict liability concept on proprietors and store owners. In Theriot, the Supreme Court, in denying an application for supervisory writs, concluded that the Court of Appeal's application of res ipsa loquitur was proper in a case where a wheel came off a truck driven by a defendant and struck plaintiff's van. In that case, recovery was granted to a plaintiff driver of a van against the defendant truckdriver.
Two members of the Supreme Court, in concurring with the denial of the application for writs, suggested that this case might be a proper one for a consideration of LSA-C.C. art. 2317 and the strict liability concept of fault without negligence.
In Simon, supra, a majority of our Supreme Court, on rehearing, concluded that defendant failed to exculpate himself from negligence where a front ball joint of an automobile driven by defendant pulled out of a socket causing the right side of defendant's vehicle to collapse resulting in the veering of the automobile into the path of plaintiff's vehicle striking him in his lane of travel. The court concluded, "The most probable cause of the ball joint failure was defective lubrication." This responsibility, they concluded, was defendant's obligation.
At page 133 of the opinion, the Court stated:
"In our original majority opinion, we overlooked that the burden of the motorist who leaves his proper lane of the highway to injure a blameless person proceeding properly in the opposite lane is not simply to exculpate himself from ordinary negligence, but from any fault whatsoever."
The opinion went on to say:
"In other words, it was his burden to show that he was not guilty of any dereliction, however slight, which may have had causal connection with the accident."
While the court places a heavy burden on defendant to exculpate himself from the slightest fault contributing to the accident, they found no necessity to discuss LSA-C. C. art. 2317. In this connection, the court stated at page 135:
"Having found Ferrington and his insurer responsible for the injuries sustained by Simon under the principles noted, we need not discuss the liability, if any, of Ferrington for `fault' under Civil Code Article 2317, as suggested by the dissenting opinions filed to the original opinion."
While the concept of strict liability is not controlling here under the present jurisprudence, the doctrine of res ipsa loquitur is applicable.
However, the inference of negligence in the instant case (created by the fall caused *384 from the defect) was negated by the testimony of plaintiffs' witness, Gerald W. Swanson, the brother-in-law of Mrs. Pear, who testified that he inspected the chair immediately after the accident and that a worn rivet broke causing the chair to collapse. He further testified that the rivets could not be seen before the accident occurred but only after the chair was broken. He further emphasized that the condition of the worn rivets was not perceptible until the chair was apart. His verbatim testimony is significant and worthy of quotation here.
"Q. After the accident allegedly occurred, you said you looked at the rivet?
"A. Right.
"Q. Was the chair made so that these rivets could be seen prior to the accident, or only after the chair was broken?
"A. Only if the chair was broken.
MR. ABBOTT:
"I have no further questions, your Honor.

RE-DIRECT EXAMINATION
Mr. Barbier:
"Q. In connection with the last question that Mr. Abbott asked you, from what you observed of the chair after the accident, could the fact that the rivets were worn, as you say they were, is that something that easily could have been seen by someone that was just going to sit on the chair?
"A. No.
"Q. How did you see it?
"A. After the accident, you couldn't tell what the rivets looked like until the chair came apart."
The record does not contain any additional evidence on the cause of the chair's collapse.
We are faced with the question of whether defendant, LaBiche's successfully carried the burden of exculpating itself from negligence absent the introduction of any further evidence on its behalf. Ordinarily, once the inference is created, it then becomes incumbent upon the defendant to show that reasonble inspection of the chair was made; or though no inspection had been made, the defect would not have been discernible through inspection, if in fact, one had been made. In the instant case, clearly no inspection was made. However, it is equally clear from Swanson's testimony that a reasonable inspection would not have discerned the defect. It necessarily logically follows that defendant carried its burden successfully. There is no necessity for defendants to prove something already proved or to exculpate themselves where the record already contained sufficient evidence to exculpate. In the instant case, the jurisprudence created the inference of negligence; however, the testimony and evidence quickly negated that inference, thereby rebutting the presumption resulting in the exculpation of the defendant. Having so concluded, we agree with the decision of the trial judge denying recovery to plaintiffs herein. Accordingly, the judgment is affirmed.
Affirmed.
NOTES
[1] Crittenden v. Fidelity and Casualty Co. of New York, 83 So.2d 538 (La.App.2nd Cir. 1955); Roca v. Prats, 80 So.2d 176 (La. App. Orleans 1955); Hickingbottom v. T. G. & Y. Stores of Louisiana, Inc., 147 So.2d 102 (La.App.2nd Cir. 1962); Powell v. L. Feibleman & Co., 187 So. 130 (La.App. Orleans 1939).